## ENGLISH v. BITGOOD.
### No. 3878.

District Court, D. Connecticut.
Jan. 5, 1938.

Curtiss K. Thompson and John H. Weir, both of New Haven, Conn., for plaintiff.

James W. Morris, Asst. Atty. Gen., and Andrew D. Sharpe and James E. Murphy, Sp. Assts. to Atty. Gen., and Robert P. Butler, U. S. Atty., and Louis Y. Gaberman, Asst. U. S. Atty., both of Hartford, Conn., for defendant.

THOMAS, District Judge.

By this suit plaintiff seeks to recover of defendant an alleged overpayment of federal income taxes for the year 1933. The case is here on allegations of the bill, many of which are admitted in the answer, together with a stipulation as to the facts signed by counsel for the parties to the suit. From these it appears that the plaintiff owned, and on February 24, 1926, leased to the F. W. Woolworth Company certain real estate situated in the city of New Haven, consisting of a tract of land and five old buildings for a term of forty-two years beginning on May 1, 1927, and ending on May 1, 1969. As consideration for the lease, the tenant agreed, inter alia, to pay an annual rental beginning at $75,000 and increasing at specified intervals to $95,000, and also to demolish the five old buildings and to erect in their stead a new building at a cost of not less than $450,000, this new building to be the property of the plaintiff subject to the lease.

The old buildings were demolished and the new building erected in 1927 at a cost of $760,709.84. The new building has a depreciable life exceeding the term of the lease. The residual value, after depreciation charges of the old building at the time of demolition, was $30,375.05.

In reporting his taxable income for the year in which the building was completed (1927) and for following years including the year involved in this action (1933), the plaintiff reported nothing on account of his acquisition of the new building or on account of demolition of the old buildings. The Commissioner of Internal Revenue, in examining the taxpayer's return for 1933, determined that reasonable depreciation charges on the new building during the term of the lease would amount to $658,324.29, and that upon the expiration of the lease the building would have an estimated residual value of $102,385.65. (This amount, which is not questioned as to accuracy by either party, appears to be the result of a mathematical error. $760,709.34 less $658,324.29 is $102,385.55). The Commissioner added ¹⁄₄₂ of this estimated residual value to the plaintiff's income for 1933, in the sum of $2,437.75, but set off against it ¹⁄₄₂ of $30,375.05, the residual value of the old buildings at the time of their demolition, amounting to $733.21, making a net addition to income of $1,704.54. (Here again is detected a slight mathematical error. $30,375.05 divided by 42 is $723.21, not $733.21.) A tax of $988.63 was assessed on the amount thus added to income, which was paid, plus $61.27 interest. The plaintiff claimed refund of this additional tax and interest, and of a further amount of $425.25 paid because of his failure to deduct the proportional part of the residual value of the demolished buildings.

The right of the plaintiff to deduct ¹⁄₄₂ of the residual value of the old buildings as of the time of their demolition is not disputed. The amount of the deduction is $723.21.

■■ The plaintiff contends that on the income issue the case is governed by Hewitt Realty Co. v. Commissioner, 2 Cir., 76 F.2d 880, 884, 98 A.L.R. 1201, and with this contention I agree. The decision there is binding here. The defendant's proposition is that when the new building was erected on the plaintiff's land it became a part of the realty, and consequently became his upon completion; that therefore its cost was taxable income to him as of the year of completion. The regulations, however, generously allow the taxpayer at his option to spread the amount of such income over the term of the lease. Now, since the estimate of the depreciation charges over the term of the lease is $658,324.29, and the total increase in the value of the land due to the erection of the building was $760,709.84, there remained to be reported, aft-

er offsetting the estimated depreciation against the cost to be reported, the sum of $102,385.55, and the defendant contends that this amount should be pro-rated over the term of the lease. The defendant's argument seems to be that the entire cost of the building was income which could have been taxed in 1927, the year of completion; that the privilege of pro-rating this income over the term of the lease is allowed as a matter of grace, and at the option of the taxpayer.

In the Hewitt Realty Company Case, the Circuit Court of Appeals for this circuit held in a similar situation that the erection of a building by a tenant constituted an unrealized addition to the value of the real estate of the landlord, and that this appreciation could be realized only by a sale or other disposition of the real estate. The erection of the building was not a severance of something from the landlord's capital, but the addition of something to it which was thereafter indivisible and inseparable from it. On this point the court, speaking through Judge Learned Hand, said:

"We concede that in a situation like that at bar a lessor need not receive money to be taxable; if improvements to land be portable—detachable machinery for example, which he can take off and sell as separate chattels—he receives income either when the lease is made, or when the term ends; for present purposes we need not say which. On the other hand, if the lease requires the lessee to drain the land, or set out shade trees, or pave it, or grade it, or build a golf course, or a race track on it, we can see no difference between the resulting increase in its value and that arising from the growth of the surrounding neighborhood or the increase in value of a share of stock. The question as we view it is whether the value received is embodied in something separately disposable, or whether it is so merged in the land as to become financially a part of it, something which, though it increases its value, has no value of its own when torn away. * * *

"Therefore in our judgment if a building when removed be worthless, save as bricks, iron, and mortar, it becomes income only when the land is sold, and then only in so far as it increases the 'amount realized' at that time—the minuend in the equation of gain."

I regard the principle thus announced as binding on this court, and I consider it

sound. The element of uncertainty which existed in that case as to whether the tenant would exercise the option to renew and thus extend the term of the lease beyond the life of the building is not present in the case at bar, but while that uncertainty apparently had some influence on the decision, it was not the basic reason for the conclusion reached, and I believe the decision would have been the same if it had been absent. The fundamental consideration is that in both the Hewitt Realty Company Case and the case at bar the taxpayer got nothing which he could take away and use for his own purposes leaving his original investment and its power to yield a return undisturbed.

The defendant cites and relies upon Morphy v. Commissioner, 35 B.T.A. 289, in which the Board of Tax Appeals refused to follow the Hewitt Realty Company decision. In referring to that decision, the Board said that "It offers what may seem to be a persuasively practical answer to a difficult problem." Against this indorsement of the principle of that case, the Board offers as its only reasons for disregarding it the following: "However, no other similar authority has come to our attention. And, the court, even in its decision of that case, was not unanimous. See dissenting opinion of Chase, Judge."

I regard the Hewitt Realty Company Case as superior and controlling authority, and the reasons given by the Board for not following it as insufficient.

There is a further reason why the plaintiff must prevail, even on the basis of the principal argument put forward by the defendant. Even if it be ultimately held that the building was realized taxable income to plaintiff to the extent of its cost as of the year of its completion, still the plaintiff must win.

The only question before this court is whether the plaintiff's income for 1933 was properly increased by a part of the cost of the building, which was completed in 1927. Nothing occurred in 1933 which enriched the plaintiff in this respect. A proportionate part of the cost of the building could be added to the plaintiff's income for 1933, even under the regulations, only if he had availed himself of the option to spread the total over the life of the lease. No part of the value of the building is actually income for 1933. If the plaintiff had elected to treat a proportionate part of the val-

644

ue as income for each year of the lease, he might have been estopped to deny it as to any year subsequent to completion of the building. The plaintiff, however, made no election and is not estopped. The increase in his income for 1933, made by the Commissioner, without his consent and over his protest, was therefore entirely unjustified, unauthorized, and illegal.

It follows therefore that judgment musc be entered for the plaintiff as prayed for in the complaint as amended with costs to abide the event.

The plaintiff's request for special finding of fact and declarations of law as set forth in his requests filed April 30th, 1937, is hereby granted, and those findings as corrected by the court and noted on the findings are made a part hereof. Submit order properly consented to as to form.