HELVERING, COMMISSIONER OF INTERNAL REVENUE, *v.* BRUUN.

No. 479. Argued February 28, 1940.—Decided March 25, 1940.

462

*Mr. Arnold Raum,* with whom *Solicitor General Jackson, Assistant Attorney General Clark,* and *Mr. Sewall Key* were on the brief, for petitioner.

*Mr. John H. McEvers* for respondent.

Mr. Justice Roberts delivered the opinion of the Court.

The controversy had its origin in the petitioner's assertion that the respondent realized taxable gain from the forfeiture of a leasehold, the tenant having erected a new building upon the premises. The court below held that no income had been realized.[1] Inconsistency of the decisions on the subject led us to grant certiorari.

The Board of Tax Appeals made no independent findings. The cause was submitted upon a stipulation of facts. From this it appears that on July 1, 1915, the respondent, as owner, leased a lot of land and the building thereon for a term of ninety-nine years.

The lease provided that the lessee might, at any time, upon giving bond to secure rentals accruing in the two ensuing years, remove or tear down any building on the land, provided that no building should be removed or torn down after the lease became forfeited, or during the last three and one-half years of the term. The lessee was to surrender the land, upon termination of the lease, with all buildings and improvements thereon.

In 1929 the tenant demolished and removed the existing building and constructed a new one which had a useful life of not more than fifty years. July 1, 1933, the lease was cancelled for default in payment of rent and taxes and the respondent regained possession of the land and building.

The parties stipulated "that as at said date, July 1, 1933, the building which had been erected upon said premises by the lessee had a fair market value of $64,-245.68 and that the unamortized cost of the old building, which was removed from the premises in 1929 to make way for the new building, was $12,811.43, thus leaving a net fair market value as at July 1, 1933, of $51,434.25, for

---

[1] *Helvering* v. *Bruun*, 105 F. 2d 442.

the aforesaid new building erected upon the premises by the lessee."

On the basis of these facts, the petitioner determined that in 1933 the respondent realized a net gain of $51,-434.25. The Board overruled his determination and the Circuit Court of Appeals affirmed the Board's decision.

The course of administrative practice and judicial decision in respect of the question presented has not been uniform. In 1917 the Treasury ruled that the adjusted value of improvements installed upon leased premises is income to the lessor upon the termination of the lease.[2] The ruling was incorporated in two succeeding editions of the Treasury Regulations.[3] In 1919 the Circuit Court of Appeals for the Ninth Circuit held in *Miller* v. *Gearin*, 258 F. 225, that the regulation was invalid as the gain, if taxable at all, must be taxed as of the year when the improvements were completed.[4]

The regulations were accordingly amended to impose a tax upon the gain in the year of completion of the improvements, measured by their anticipated value at the termination of the lease and discounted for the duration of the lease. Subsequently the regulations permitted the lessor to spread the depreciated value of the improvements over the remaining life of the lease, reporting an aliquot part each year, with provision that, upon premature termination, a tax should be imposed upon the excess of the then value of the improvements over the amount theretofore returned.[5]

In 1935 the Circuit Court of Appeals for the Second Circuit decided in *Hewitt Realty Co.* v. *Commissioner*,

[2] T. D. 2442, 19 Treas. Dec. Int. Rev. 25.

[3] Regulations 33 (1918 Ed.) Art. 4, ¶ 50; Regulations 45 (2d 1919 Ed.) Art. 48.

[4] This court denied certiorari, 250 U. S. 667.

[5] T. D. 3062, 3 Cum. Bull. 109; Regulations 45 (1920 Ed.), Art. 48; Regulations 62, 65, and 69, Art. 48; Regulations 86, 94, and 101, Art. 22 (a) —13.

76 F. 2d 880, that a landlord received no taxable income in a year, during the term of the lease, in which his tenant erected a building on the leased land. The court, while recognizing that the lessor need not receive money to be taxable, based its decision that no taxable gain was realized in that case on the fact that the improvement was not portable or detachable from the land, and if removed would be worthless except as bricks, iron, and mortar. It said (p. 884): "The question as we view it is whether the value received is embodied in something separately disposable, or whether it is so merged in the land as to become financially a part of it, something which, though it increases its value, has no value of its own when torn away."

This decision invalidated the regulations then in force.[6]

In 1938 this court decided *M. E. Blatt Co.* v. *United States,* 305 U. S. 267. There, in connection with the execution of a lease, landlord and tenant mutually agreed that each should make certain improvements to the demised premises and that those made by the tenant should become and remain the property of the landlord. The Commissioner valued the improvements as of the date they were made, allowed depreciation thereon to the termination of the leasehold, divided the depreciated value by the number of years the lease had to run, and found the landlord taxable for each year's aliquot portion thereof. His action was sustained by the Court of Claims. The judgment was reversed on the ground that the added value could not be considered rental accruing over the period of the lease; that the facts found by the Court of Claims did not support the conclusion of the Commissioner as to the value to be attributed to the im-

---

[6] The *Hewitt* case was followed in *Hilgenberg* v. *United States,* 21 F. Supp. 453; *Staples* v. *United States,* 21 F. Supp. 737, and *English* v. *Bitgood,* 21 F. Supp. 641.

provements after a use throughout the term of the lease; and that, in the circumstances disclosed, any enhancement in the value of the realty in the tax year was not income realized by the lessor within the Revenue Act.

The circumstances of the instant case differentiate it from the *Blatt* and *Hewitt* cases; but the petitioner's contention that gain was realized when the respondent, through forfeiture of the lease, obtained untrammeled title, possession and control of the premises, with the added increment of value added by the new building, runs counter to the decision in the *Miller* case and to the reasoning in the *Hewitt* case.

The respondent insists that the realty,—a capital asset at the date of the execution of the lease,—remained such throughout the term and after its expiration; that improvements affixed to the soil became part of the realty indistinguishably blended in the capital asset; that such improvements cannot be separately valued or treated as received in exchange for the improvements which were on the land at the date of the execution of the lease; that they are, therefore, in the same category as improvements added by the respondent to his land, or accruals of value due to extraneous and adventitious circumstances. Such added value, it is argued, can be considered capital gain only upon the owner's disposition of the asset. The position is that the economic gain consequent upon the enhanced value of the recaptured asset is not gain derived from capital or realized within the meaning of the Sixteenth Amendment. and may not, therefore, be taxed without apportionment.

We hold that the petitioner was right in assessing the gain as realized in 1933.

We might rest our decision upon the narrow issue presented by the terms of the stipulation. It does not appear what kind of a building was erected by the tenant or whether the building was readily removable from the

land. It is not stated whether the difference in the value between the building removed and that erected in its place accurately reflects an increase in the value of land and building considered as a single estate in land. On the facts stipulated, without more, we should not be warranted in holding that the presumption of the correctness of the Commissioner's determination has been overborne.

The respondent insists, however, that the stipulation was intended to assert that the sum of $51,434.25 was the measure of the resulting enhancement in value of the real estate at the date of the cancellation of the lease. The petitioner seems not to contest this view. Even upon this assumption we think that gain in the amount named was realized by the respondent in the year of repossession.

The respondent can not successfully contend that the definition of gross income in § 22 (a) of the Revenue Act of 1932[7] is not broad enough to embrace the gain in question. That definition follows closely the Sixteenth Amendment. Essentially the respondent's position is that the Amendment does not permit the taxation of such gain without apportionment amongst the states. He relies upon what was said in *Hewitt Realty Co.* v. *Commissioner, supra,* and upon expressions found in the decisions of this court dealing with the taxability of stock dividends to the effect that gain derived from capital must be something of exchangeable value proceeding from property, severed from the capital, however invested or employed, and received by the recipient for his separate use, benefit, and disposal.[8] He emphasizes the necessity that the gain be separate from the capital and separately disposable. These expressions, however,

---

[7] c. 209, 47 Stat. 169, 178.

[8] See *Eisner* v. *Macomber*, 252 U. S. 189, 207; *United States* v. *Phellis*. 257 U. S. 156, 169.

were used to clarify the distinction between an ordinary dividend and a stock dividend. They were meant to show that in the case of a stock dividend, the stockholder's interest in the corporate assets after receipt of the dividend was the same as and inseverable from that which he owned before the dividend was declared. We think they are not controlling here.

While it is true that economic gain is not always taxable as income, it is settled that the realization of gain need not be in cash derived from the sale of an asset. Gain may occur as a result of exchange of property, payment of the taxpayer's indebtedness, relief from a liability, or other profit realized from the completion of a transaction.[9] The fact that the gain is a portion of the value of property received by the taxpayer in the transaction does not negative its realization.

Here, as a result of a business transaction, the respondent received back his land with a new building on it, which added an ascertainable amount to its value. It is not necessary to recognition of taxable gain that he should be able to sever the improvement begetting the gain from his original capital. If that were necessary, no income could arise from the exchange of property; whereas such gain has always been recognized as realized taxable gain.

*Judgment reversed.*

The CHIEF JUSTICE concurs in the result in view of the terms of the stipulation of facts.

MR. JUSTICE McREYNOLDS took no part in the decision of this case.

---

[9] *Cullinan* v. *Walker*, 262 U. S. 134; *Marr* v. *United States*, 268 U. S. 536; *Old Colony Trust Co.* v. *Commissioner*, 279 U. S. 716; *United States* v. *Kirby Lumber Co.*, 284 U. S. 1; *Helvering* v. *American Chicle Co.*, 291 U. S. 426; *United States* v. *Hendler*, 303 U. S. 564.