## GOWERN'S ESTATE et al. v. COMMIS-SIONER OF INTERNAL REVENUE.

### No. 7610.

Circuit Court of Appeals, Third Circuit.

March 27, 1941.

Wm. G. Heiner, of Pittsburgh, Pa., for petitioners.

Alvin J. Rockwell, Sp.Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Louise Foster, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before BIGGS, CLARK, and JONES, Circuit Judges.

BIGGS, Circuit Judge.

On June 1, 1916, W. J. Gowern and others leased to J. G. McCrory Company certain improved real estate in Canonsburg, Pennsylvania, for a term of twenty-five years beginning upon April 1, 1917, at a rental of $900 a year. The lessee, a Pennsylvania corporation, was one of the subsidiaries of McCrory Stores Corporation, a Delaware corporation. The lease provided, among other things, that "The present building and improvements now on the premises are to revert to the Lessee and may be used and disposed of by it as it deems best and proper, and the Lessee is to construct on or before January 1st, 1918 a two (2) story brick building covering the entire leased premises, * * * and at the expiration or prior termination of this lease the buildings and improvements are to revert to the Lessors herein."

About April 1, 1917 the lessee took possession of the premises, tore down the buildings already erected and built a new building which was completed in November, 1919, at a cost of about $26,000. On January 14, 1933, the parent corporation, McCrory Stores Corporation, was adjudicated a bankrupt and Irving Trust Company was elected trustee. Seventeen days later the lessee was adjudicated a bankrupt and in May, 1933, Richard O. Smith was elected trustee.

On June 7, 1933, the referee in bankruptcy entered an order authorizing the bankrupts " * * * upon the disaffirmance or rejection by Trustee and/or Subsidiary Trustee [Richard O. Smith] of any lease or sublease to which any of the bankrupts hereinbefore mentioned may be a party, and upon the request of the Trustee and the landlord under the lease so disaffirmed * * *" to assign to their respective landlords their rights and interests in the leases or the leased premises. By the same order the referee authorized the trustee in its discretion to enter into new leases for any of the premises then occupied for store purposes for periods terminable upon thirty days' notice to be given by the trustee. Shortly thereafter and in July, 1933, the trustees and the lessors executed an agreement authorizing the lessee to occupy the premises in Canonsburg on a month to month basis for a monthly rental of $75, plus taxes, water rent and insurance. On May 10, 1934 the trustee elected to disaffirm and reject the lease of June 1, 1916 (the lease originally executed by W. J. Gowern and others), and on the

same date entered into a new lease with Gowern and others for the premises for a term of twelve years commencing on May 1, 1934 and ending April 30, 1946, at a rental of $100 per month for the first four years, $150 per month for the next four years, $200 per month for the remaining four years, taxes, water rent and insurance to be paid by the lessee. The trustee retained the right to terminate this lease upon thirty days' notice. The lessee has continued to occupy the premises until the present time.

Gowern died on October 10, 1935. He never took any action with respect to electing to report his taxable income, his proportionate part of the value of the new building in the year of completion, or to electing to report any aliquot portion thereof each year over the life of any of the leases, nor did he ever report on any income tax return any portion of the cost of the new building or claim any depreciation thereon upon any theory or basis whatsoever. Moreover, the lease of June 1, 1916 provided that the old buildings and improvements already erected on the land on June 1, 1916 were to revert to the lessee and to be used and disposed of by the lessee as it deemed best and proper. Nothing contained in the stipulation of facts would tend to support a conclusion that the value of the real estate was not enhanced to the full value of the building erected thereon by the lessee under the lease of June 1, 1916.

The Commissioner determined that upon the disaffirmance and surrender of the lease of June 1, 1916 by the trustee on May 10, 1934, Gowern realized income in the sum of $9,230, representing his interest in the improvements made on the leased premises during the lessee's occupancy. Gowern's executrices filed a petition with the Board of Tax Appeals to review the decision of the Commissioner. The Board held that the value of the building became income to the lessors in 1934 upon the disaffirmance of the lease of June 1, 1916 by the trustee, and decided there was a deficiency in Gowern's income tax for the year 1934 in the sum of $1,629.04. A petition for review was thereupon filed in this court.

The question presented for our determination is whether the value of the building erected by J. G. McCrory Company at a cost of $26,000 pursuant to the terms of the lease constitutes income to the lessor within the purview of Section 22 of the Revenue Act of 1934, c. 277, 48 Stat. 680, 26 U.S.C.A. Int.Rev.Acts, page 669, upon the disaffirmance of the lease by the lessee's trustee in bankruptcy, a new lease being executed by the lessors with the trustee.[1]

■ The petitioners contend, first, that the cost of the improvements made by the lessee was not intended to be in the nature of rent, citing Blatt Co. v. United States, 305 U.S. 267, 59 S.Ct. 186, 83 L.Ed. 167. They say that because the cost of the building to be erected upon the premises was uncertain, as was its time of completion, and because the paragraph of the lease agreement providing for the payment of a money rent is separated from that paragraph providing for the erection of the building, the parties to the agreement demonstrated an intention not to consider the improvements as rent. The definition of gross income contained in Section 22(a) is broad enough to embrace any gain added to Gowern's real estate. His land was enriched by a new building which added an ascertainable amount to its value. There can be no contention by the petitioners that the amount of that increase in value was not the value [2] of the new building. This phase of the case is controlled by the ruling of the Supreme Court in Helvering v. Bruun, 309 U.S. 461, 60 S.Ct. 631, 84 L.Ed. 864.

■ The second contention of the petitioners is that there was no termination of the lease in 1934 so that Gowern and the others were entitled to use, occupy or dispose of the premises. The petitioners point out that the trustee and the bankruptcy court controlled Gowern's right to regain his premises. We are unable to attach any particular importance to this fact, however, for when the trustee disaffirmed the lease, Gowern and his co-owners became entitled to dispose of the premises as they saw fit. The event of disaffirmance took place in 1934 and the new lease was executed in 1934. While the petitioners make much of the argument that the trustee would not give up the old lease until a new one was agreed to, none the less the agreement of Gowern and his co-owners

[1] See also Article 22(a)-13 of the Treasury Regulations 86.

[2] The petitioners do not urge that this amount is subject to any deductions by reason of the value of the old buildings which were torn down to make way for the new.

was necessary to bring the new lease into being. The owners had control of the property for that purpose and it is that control which makes the gain to the owners taxable under Section 22(a), not a medieval conception of an instant in time in which the owner of land may re-enter and take possession. The owner has control and dominion of improvements when he procures a lease for them and presently rents them. We can perceive no substantial difference between the case at bar and Helvering v. Bruun.

Accordingly the decision of the Board of Tax Appeals is affirmed.

