*55 OPINION.
Black:
The petition contains only one assignment of error, and it is as follows:
The respondent erred in including in petitioner’s income for the year 1934 •on account of the cancellation of a ninety-nine year lease on property located in the City of Louisville, State of Kentucky, the sum of $150,000.00, which represents the respondent’s alleged value, at the time of said cancellation, of improvements made on said property by the lessee.
The petitioners, who are the executors of the estate of Kate H. Alexander, in their brief advance several points in support of their contention that the estate should not be taxed with the $150,000 which the Commissioner has determined.
The most of these points and a considerable part of the brief are devoted to an effort to establish the proposition that the fair market value of the building was not income to the estate in any year. We shall not undertake to enumerate these arguments in detail, but simply say that we are not impressed by them. In our judgment, under the Supreme Court’s decision in Helvering v. Bruun, 309 U. S. 461, the fair market value of the building was clearly income to the decedent, to use the language of the court, “in the year of repossession.” See also Helvering v. Wood, 309 U. S. 637; Helvering v. Center Investment Co., 309 U. S. 639.
So in the light of the foregoing authorities, we think the important inquiry in the instant case is, what was the year of repossession? If that year was 1934, as respondent has determined, then we think the estate is taxable on the $150,000 in question, because there is really no dispute about the value of the building. The overwhelming testimony is to the effect that it had a value of at least $150,000 apart from the land.
*56 Petitioners dispute that 1934 was the year of repossession. One of their several points as to why the estate should not be taxed with the $150,000 in the year 1934 is that the lessee surrendered possession and enjoyment by assignment in 1933, and no gain was realized in 1934.
Petitioners on this point alleged facts in their petition as follows:
(k) On June 20, 1932, said The Theatre-Realty Corporation assigned the said ninety-nine (99) year leasehold to the Mercantile Realty Company, a corporation, which paid no part of the rental of $44,000.00 per year during the period June 20,1932 to May 17, 1934.
(k) (1) On May 20,1933, the Mercantile Realty Company assigned, in writing, to the owner of the real estate, possession and enjoyment of the land and building.
1) Due to default of the Mercantile Realty Company, the lease was formally cancelled on May 17, 1934.
The evidence at the hearing established the correctness of the foregoing facts alleged in the petition. What is the legal effect of these facts % We think it is that the decedent came into the untrammeled possession and control of the building in 1933, although, the Tease was not formally canceled and annulled until 1934. It must be remembered that legal title to the building from the very moment of its erection vested in the owner of the land. It was only the possession of the land and building which was withheld from the landlord as long as the tenant exercised his privileges under the lease and managed and controlled the property. When the tenant no longer exercised management and control of the property and surrendered possession to the fee owner of the land and building, that surrender of possession and control became the occasion for the tax. Helvering v. Bruun, supra.
The lease in question became burdensome to the original lessee, the Theatre Realty Corporation, and on June 20, 1932, it assigned the lease to the Mercantile Realty Co., an irresponsible and insolvent corporation, for an alleged consideration of $250. Decedent refused to recognize the validity of this assignment and in 1932 entered suit in the Jefferson Circuit Court, Chancery Branch, Second Division, against the Theatre Realty Corporation, et al., seeking a declaration of rights under the lease and asking that this assignment be adjudged invalid and therefore fraudulent and void. On October 7, 1933, the court sustained the validity of the assignment of the lease from the Theatre Realty Corporation to the Mercantile Realty Co., and its decision was affirmed by the Court of Appeals of Kentucky, March 23,1934.
Prior to the decision of the lower court on October 7, 1933, upholding the validity of the assignment of the lease to the Mercantile Realty Co. that corporation had surrendered all possession and control of the building to the agent of Kate H. Alexander.
*57 On May 20, 1933, the Kentucky Title & Trust Co., as agent of Kate H. Alexander, took over from Mercantile Realty Co. by assignment all subleases on the property and took possession, and enjoyment of the property and since then has managed the property, paid taxes and all operating expenses, secured tenants, and collected all rentals and income and accounted therefor periodically to Kate H. Alexander or her legal representatives, as owners of the property. We think these facts fix the time of decedent’s coming into untrammeled possession and enjoyment of the building as 1933, and not 1934, as the respondent has determined.
After May 20, 1933, who was disputing decedent’s untrammeled right of possession and control of the premises?' Certainly not the Theatre Realty Corporation, the original lessee. In 1932 it had assigned all of its interests to the Mercantile Realty Co. and thereafter disclaimed any ownership or control whatever over the leased property. Certainly not the Mercantile Realty Co., for on May 20, 1933, it assigned every sublease that it had taken on the property to the agent of decedent, turned the property over to the agent of decedent, and thereafter made no attempt to exercise any dominion and control over the building.
It is true that it was not until March 23, 1934, that the Court of Appeals of Kentucky affirmed the decision of the lower court, which upheld the validity of the assignment of the lease to the Mercantile Realty Co., and it was not until May 17, 1934, thereafter that the Mercantile Realty Co. formally delivered up and canceled the lease to decedent by a written instrument. This formal, written cancellation and surrender of the lease was, however, in our judgment no more than a recognition and affirmance of what had already been done in 1933, and can not be made the incidence of the tax.
Under these circumstances we think that the fair market value of the building was income to decedent in 1933 and not in 1934, as the Commissioner has determined. Cf. North American Oil Consolidated v. Burnet, 286 U. S. 417. See also Standard Lumber Co., 28 B. T. A. 352, in which we said:
Therefore we do not regard as controlling the fact, so strongly relied on by petitioner, that its deed was not delivered until 1926, for the consummation of a sale is not dependent upon delivery of a deed where, as here, the consideration was received and the benefits and burdens of ownership were transferred previously Nibley-Mimnaugh Lumber Co., 26 B. T. A. 978; Davidson & Case Lumber Co. v. Motter, 14 Fed. (2d) 137. * * *
In the recent cáse of Gowern v. Commissioner, 119 Fed. (2d) 83, the question was whether the value of a building erected on the premises by the lessee was income to the lessor in the year when he regained control over the property. The court held that it was, *58 affirming a memorandum opinion of the Board to the same effect. Among other things, the court said:
* * * While the petitioners make much of the argument that the trustees •would not give up the old lease until a new one was agreed to, none the less the agreement of Gowern and his co-owners was necessary to bring the new lease into being. The owners had control of the property for that purpose and it is that control which makes the gain to the owners taxable under Section 22 (a), not a medieval conception of an instant in time in which the •owner of land may re-enter and take possession. The owner has control and, dominion of improvements when he procures a lease for them and presently rents them. * * * [Italics ours.]
In the instant case, after May 20, 1933, Kate H. Alexander, through her agent, collected all rents from the subtenants of the building, had the right to negotiate all new leases for vacant space therein, paid all taxes, and otherwise exercised complete control and dominion over the building and premises. Therefore, it seems clear to us that on May 20, 1933, the benefits and burdens of the building passed to her and then was the incidence of the tax, and not in 1934, when the Mercantile Realty Co. executed a formal written relinquishment of the lease and premises.
We sustain petitioners on this point, and it is determinative in their favor of the only issue involved, because we do not have the year 1933 before us.

Decision will be entered under Rule 50.