## BONWIT TELLER, Inc., v. COMMISSIONER OF INTERNAL REVENUE.

### No. 201.

Circuit Court of Appeals, Second Circuit.

July 7, 1943.

Arther B. Hyman, of New York City, for petitioner Bonwit Teller, Inc.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Helen R. Carloss, and N. Barr Miller, Sp. Assts. to the Atty. Gen., for respondent Commissioner of Internal Revenue.

Before L. HAND, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

In April, 1930, a company, of which the petitioner is the successor, and which will be called the "old company," leased from the owner, premises 721 Fifth Avenue, New York City, with its improvements, at $475,000 per year. The lease was from May 1, 1930, to July 31, 1951. In 1931 the old company made improvements costing $618,964.64 in the building on the demised premises. These improvements were not removable, had an estimated useful life of twenty years, and the depreciation was deducted in its income tax returns at the rate of 5 per cent per annum down to July 1, 1933.

The business depression so affected the old company that in 1931 it procured a reduction of its annual rental to $300,000 and thereafter negotiated for a further reduction. The depression also affected the landlord so that it was unable to meet interest payments on mortgages held on the leased property by the City Investing Company. As a result of negotiations between the landlord, the tenant and the mortgagee, the

landlord executed a new lease to the old company for a term from December 14, 1932, to September 30, 1938. The new lease provided that the tenant should pay a rental of 5% of its receipts for sales on the premises with a fixed minimum rental of $100,000 per year, that the rental should be paid directly to the mortgagee, and that the lessor might terminate the lease on 90 days' written notice. Concurrently with the lease the landlord delivered to the mortgagee an instrument which placed the mortgagee in control of the premises with a right to all rents and to exercise all of the rights reserved to the landlord under the new lease.

The financial difficulties of the old company continued and on July 25, 1933, as of the close of business on June 30, 1933, it transferred all its assets, except the lease on the demised premises, to the taxpayer, which had been organized to conduct the business of the old company, in exchange for sales of the taxpayer's capital stock. Under the arrangement the taxpayer assumed all the obligations of the old company except its liabilities under the lease. This transfer was part of a tax-free organization resulting in neither profit nor loss to the old company, which neither reported profit or loss for income tax.

The taxpayer entered on its books the assets of the old company, including the leasehold improvements, at the same amounts for which they had been carried on the books of the old company, but, in December, 1936, the books were rewritten and the item representing the leasehold improvements was written down to $1. The taxpayer occupied the premises and continued the business which had formerly been conducted there. All this was with the consent of the mortgagee. Since the date of the transfer of the assets, the taxpayer has claimed depreciation on the improvements made by the old company at the same rate as claimed by the latter prior to the transfer.

On August 4, 1933, the old company was adjudicated a bankrupt and, on September 6, 1933, Irving Trust Company was appointed trustee in bankruptcy. On October 10, 1933, the trustee notified the landlord that it refused to adopt the lease for the benefit of the bankrupt estate. The shares of stock in the taxpayer were assigned to the creditors of the old company as a composition in bankruptcy and the latter corporation was dissolved on December 15, 1937.

On or about April 1, 1936, the mortgagee, City Investing Company, assigned its mortgage to American Company, as well as its rights as mortgagee in possession of the demised premises, including its rights to receive rents and to exercise powers under the lease of December 14, 1932.

On or about March 30, 1937, American Company organized a wholly owned subsidiary for the purpose of acquiring a fee simple in the demised premises and with the original owner conveyed the premises to this subsidiary subject to the rights of the tenants in possession. As a consideration for the transfer the subsidiary paid the sum of $500,000 and assumed the existing mortgages. The aggregate total amounted to $5,808,894.82, of which it entered on its books $2,219,224.37 as the value of the building, which was the percentage of the assessed value of the building to the assessed value of the land and building. Under date of December 1, 1937, the subsidiary, Fifty-Six & Fifth Corporation, executed a lease to the taxpayer for a term beginning December 1, 1937, and ending January 31, 1950, in which the subsidiary reserved no right to enter the premises prior to the expiration of the term except for breach of covenants of the lease. The taxpayer had continuously occupied the premises and had paid to City Investing Company and to its successor American Company as mortgagees in possession respectively sums equal to the amout of rent provided for in the lease to the old company, dated December 14, 1932. No written leases, other than the leases dated April 7, 1930, and December 14, 1932, were executed by the owner or the mortgagee in possession prior to the lease of December 1, 1937.

The original owner of the premises never entered on its books the value of the improvements to the building made by the original tenant at the cost of $618,916.64, or of some additional improvements made by the taxpayer in 1933 and 1934 (while in occupation for those years), at the cost of $3,741.61, nor did it make any claim for depreciation on those improvements in its income tax returns. Fifty-Six & Fifth Corporation, however, entered on its books the cost of the building to it of $2,219,224.37 and in its income tax returns deducted depreciation thereon on an estimated useful life of the building of twenty-five years from the date it became owner of the same, on or about April, 1937.

The Commissioner disallowed the depreciation claimed by the taxpayer for the taxable year ended January 31, 1939, on the improvements which had been installed by the old company, and assessed an income tax deficiency based on the amount of depreciation deducted for that year. The Tax Court concurred in the Commissioner's view and determined a deficiency of $17,285.91. We think this disposition was right and should be affirmed.

The only reason a tenant is allowed to depreciate improvements he has made is that when his lease expires he loses what he has contributed to the term of the lease. His improvements are for him a wasting asset even though they have a useful life beyond the limits of the term of the lease. If the term is cut short their unamortized value may be deducted as a loss to the tenant. Coincidently there will be a recognizable gain to the landlord, coming into possession of the improvements, who may depreciate their value out of the subsequent rentals. Helvering v. Bruun, 309 U.S. 461, 60 S.Ct. 631, 84 L.Ed 864; Lewis v. Pope Estate Co., 9 Cir., 116 F.2d 328, 330, 138 A.L.R. 235. Prior to December 14, 1932, when the second lease was made, the old company was entitled to a deduction based on the cost of its improvements made during the pendency of the original lease, but on that date it surrendered the original term and took a new lease under which the improvements passed to the landlord. Accordingly, it may well be the old company lost all right to depreciate its original capital investment. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed 1348. While it might actually recoup a part of its loss through obtaining a reduction of rent for the new term, it had lost its capital investment in the improvements, through surrender of the original lease, and had at the same time lost its correlative right to deduct annual depreciation thereon. Weiss v. Wiener, 279 U.S. 333, 49 S.Ct. 337, 73 L.Ed. 720.

But even if this view of the effect of the lease of December 14, 1932, be regarded as unduly technical, and if it can be reasonably argued that that lease was the equivalent of a continuation by the landlord at a modified rent of the original lease of 1930, and if the lease of 1932 caused no cessation of the rights to depreciation of the old company, nevertheless any such rights ceased when the taxpayer was organized in order to get rid of the large existing rent obligations and the taxpayer entered into the new lease of December 1, 1937, on its own behalf. The old company had in the meantime been adjudicated a bankrupt, its trustee had refused to adopt the lease of December 14, 1932, and there had been a composition with its creditors followed by dissolution proceedings. It had invested nothing in the improvements which had passed to Fifty-Six & Fifth Corporation and the latter was deducting depreciation thereon on the basis of the estimated cost to it of the improvements. To hold that the taxpayer was entitled to deduct depreciation on the basis of the old company would be beyond all reason. Helvering v. Lazarus & Co., F. & R. 308 U.S. 252, 254, 60 S.Ct. 209, 84 L. Ed. 226; Detroit Edison Co. v. Commissioner, 63 S.Ct. 902, 87 L.Ed. ——.

But the taxpayer argues that it acquired the cost basis of the old company because it was the transferee of the latter in a tax-free reorganization. The only ground for such a contention would be that it acquired the old company's lease in exchange for the issue of its own stock, but it did not do this. On the contrary, the lease of December 14, 1932, was expressly excluded from the transfer of the property of the old company to the taxpayer. It is perfectly clear that the taxpayer never succeeded to the term of the old company, for the reason, among others, that all rights in the existing lease were reserved to the old company at the time of the transfer. Any inference that the lease of December 14, 1932, was assigned to the taxpayer because the old company conducted its business on the same premises with the acquiescence of the owner is met by reservation of that lease from the transfer.

We find no merit in the position of the taxpayer and the order of the Tax Court is affirmed accordingly.