LEWIS EUGENE GRIGSBY TRUST, SECURITY-FIRST NATIONAL BANK OF
LOS ANGELES AND STEWART P. MACLENNAN, TRUSTEES, PETITIONER,
*v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3397.   Promulgated May 18, 1945.

*W. L. Nossaman, Esq.,* for the petitioner.
*Earl C. Crouter, Esq.,* for the respondent.

## OPINION.

TURNER, *Judge*: The primary contentions of the petitioner are (1) that the improvements on the leased premises were included by the respondent in the gross estate of Lewis Eugene Grigsby in determining the estate tax liability and, therefore, could never be income to his estate or to the instant trust, which was created under his will; (2) that if any income was realized by the trust upon termination of the lease and its acquisition of the improvements, such income was realized not in 1939, but in 1934, when Long Beach Properties, Inc., was organized and acquired the lease; and (3) that if any income was realized either in 1934 or in 1939, it was taxable to the beneficiaries of the trust as income currently distributable to them and therefore deductible by the trust in computing its net income. The respondent's position is that the value of the improvements was not included by him in determining the gross estate of Grigsby, that the trustees never acquired the improvements until 1939, that the income of the trust was distributable in the discretion of the trustees, and that, the income from the improvements not having been distributed, it was not deductible in computing the net income of the trust.

That a transaction whereby a lessor, through the surrender of a lease, acquires improvements which have been erected on the leased property by the lessee at its own cost is a gain-realizing transaction, is no longer open to question. *Helvering* v. *Bruun*, 309 U. S. 461. In the instant case, the building in question was constructed by the lessee, the Owl Drug Co., but upon completion of the building the lease was assigned to the Owl Realty Co., which succeeded to all of the rights and liabilities of the Owl Drug Co. When the lease was made the property was owned jointly by Lewis Eugene Grigsby and his wife, and in 1930 Grigsby became the sole owner as the surviving joint tenant. Grigsby died in 1932, and sometime in 1933 the Owl Realty Co. notified his executors that it would not thereafter comply with the terms of the lease. It offered to release and quitclaim or assign its leasehold interest in the property, and to pay certain unpaid taxes thereon and all rents collected by it therefrom after January 1, 1934, if the executors would release it from all claims and demands against it under the lease. In May of 1934 the property, subject to the lease, was distributed to the trust herein pursuant to the terms of the Grigsby will. In July of 1934 the trustees brought their problem with respect to the said

property to the attention of the court and in August of that year obtained the court's permission to accept the offer of the Owl Realty Co. and to permit the assignment of the leasehold interest to any person or corporation acceptable to the trustees. The trustees thereupon caused Long Beach Properties, Inc., to be organized, and they became its only stockholders. On November 27, 1934, the Apex Realty Co., formerly the Owl Realty Co., assigned and transferred its interest under the lease to Long Beach Properties, Inc. The assignment of the leasehold interest was the consideration to Long Beach Properties, Inc., for the issuance of its stock. It received no money or other property therefor. From the time of its creation until its dissolution in 1939, Long Beach Properties, Inc., never engaged in any business except the holding and operating of the leasehold. At no time did it ever have any assets other than the leasehold and such rights and interests as were acquired thereunder. The rents owing by sublessees on the leased property, when collected, were turned over to the trustees. The trustees in fact supervised the leasing of the property and the collection and application of the rents received from the tenants.

From the facts, it is apparent, we think, that for the purposes of applying *Helvering* v. *Bruun, supra*, the lease was surrendered in 1934, and any gain resulting from the acquisition of the improvements through such surrender was realized in that year. Long Beach Properties, Inc., was petitioner's nominee. It issued its stock to petitioner, receiving the lease therefor. The fact that the petitioner did not see fit to cancel the lease and make a new one, but decided to continue operation of the properties under the former lease, is of no consequence. Income subject to one's unfettered command and that he is free to receive as his own is income to him, whether he sees fit to receive it or not. *Corliss* v. *Bowers*, 281 U. S. 376. In 1939, when the lease was formally canceled and Long Beach Properties, Inc., was dissolved, the petitioner here was, in so far as the above improvements were concerned, receiving back only that which it had formerly acquired in 1934, and any gain realized through acquisition of the said improvements was realized in 1934, not in 1939.

By reason of the conclusion reached, it becomes unnecessary for us to consider the remaining contentions of the petitioner, and the respondent is free to consider with respect to the gain, if any, realized by the trust in 1934, the applicability of section 3801 of the Internal Revenue Code.

*Decision will be entered for the petitioner.*