RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Petitioner, v. TAX COURT OF PUERTO RICO, Respondent; ANTONIO CAUBET, Intervener. ANTONIO CAUBET, Petitioner, v. TAX COURT OF PUERTO RICO, Respondent; TREASURER OF PUERTO RICO, Intervener.

Nos. 186–187. Argued February 1, 1949.—Decided April 18, 1949.

*Vicente Géigel Polanco, Attorney General, (Luis Negrón Fernández,* former *Attorney General,* on the brief) and *Elmer Toro Lucchetti, Assistant Attorney General,* for the Treasurer of Puerto Rico. *J. J. Ortiz Alibrán* for Antonio Caubet.

MR. JUSTICE SNYDER delivered the opinion of the Court.

On August 12, 1905 Antonio Caubet and Gervasio Fernández purchased as co-owners the real property located at 32 Allen Street, San Juan, for $18,750. They immediately leased it to the vendor, Sucrs. de A. Mayol & Cía. On June 7, 1912 the lease was renewed, providing for the first time the following:

"Fifth—The lessors may make repairs on the house, provided they do not prejudice the construction or impair its value, and said repairs, like any other improvement, will remain at the termination of the lease for the benefit of the owners of the property, without the latter having to pay the lessees anything therefor."

Sometime in 1913, after March 1, 1913, the lessee demolished the brick house located on the property and erected thereon a three-story reinforced concrete building at a cost of $69,500. Of this amount, Caubet and his co-owner paid the lessee $30,000. In 1942 the lessee bought the property from the co-owners for $60,000.

In his 1942 income tax return Caubet deducted a certain amount as a loss on the sale of the property. The Treasurer notified him with a deficiency on the ground that the transaction had resulted in a gain of $38,790 for the co-owners. The Tax Court found that the gain was $26,906, of which half, or $13,453, corresponded to Caubet. We granted the petitions for certiorari which both Caubet and the Treasurer filed.

■■■ We examine first the petition of the taxpayer. In view of §§ 15(a), 5(a), 5(b), 7(a) and 7(b) of the Income Tax Act,[1] the Tax Court determined the gain in the following manner:

| | | |
|---|---|---|
| Sales price | | $60, 000. |
| Value of the lot on March 1, 1913 | $18, 000.[2] | |
| | | |
| Value of the old building on March 1, 1913 | 5, 000.[3] | |
| Cost of the building to the co-owners | 30, 000. | |
| | | |
| | $53, 000. | |
| Less: | | |
| Depreciation | 19, 906. | |
| | | |
| | 33, 094. | |
| | | |
| Gain | | $26, 906. |

[1] Section 15(a):
"The term 'gross income' includes gains, profits, and income derived from . . . businesses, commerce, or sales, or dealings in property, whether real or personal . . . "
Section 5(a):
"Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in subdivisions (a) or (b) of section 7 . . . "
Section 5(b):
"In computing the amount of gain or loss under subdivision (a) proper adjustment shall be made for (1) any expenditure, properly chargeable to capital account, and (2) any item of loss, exhaustion, wear and tear, obsolescence, amortization, or depletion, properly chargeable with respect to such property."
Section 7(a):
"The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property . . . "
Section 7(b):
"The basis for determining the gain or loss from the sale or other disposition of property acquired before March 1, 1913, shall be (A) the cost of such property . . . or (B) the fair market value of such property as of March 1, 1913, whichever is greater. . . . "
[2] Instead of $8,262, which was the figure fixed by the Treasurer.
[3] This item was omitted by the Treasurer. Its inclusion is the only error assigned by the Treasurer in his petition for certiorari, discussed hereinafter.

The first assignment is directed against the refusal of the Tax Court to consider as part of the cost of the property the entire amount of $69,500, which Sucrs. de A. Mayol & Cía. expended in 1913 in constructing the new building. The theory of the taxpayer is that this sum was spent in improvements contemplated by the fifth clause of the lease.

The Tax Court rejected this theory because it found that under the circumstances the parties had varied the lease and had entered into a different contract. It held that the $69,500 was not expended in improvements pursuant to the fifth clause of the lease. On the contrary, it concluded that there had been a supersession rather than improvements in the property.

We agree with the Tax Court that the lessee did not effect improvements in the property. He destroyed it completely and constructed a new building. The parties understood that this was not included within the fifth clause of the lease. The latter provided that the lessor would not be required to indemnify the lessee for improvements. Yet Caubet and his co-owner paid the lessee $30,000 because the latter constructed the new building. The Tax Court correctly included $30,000 rather than the entire $69,500 as part of the cost of the building. See §§ 1433, 1447, 294 *et seq.*, Civil Code, 1930 ed.

The taxpayer relies on *Porrata* v. *Domenech, Treas.*, 51 P.R.R. 210. We held there that the value of an irrigation pump installed by the lessee should be included as part of the cost of real estate to the lessor when the latter sold the property, in view of a provision in the lease that all permanent improvements would inure to the benefit of the lessor.

The *Porrata* case is distinguishable for two reasons. In the first place, the Tax Court found, and we agree, that a similar provision in the lease herein had been superseded by a new, apparently verbal, agreement that there would be a new construction rather than improvements and that the

owners would contribute in part to the cost thereof. In the second place, the lessors actually paid $30,000 in order to acquire title to the new building.

Moreover, the Supreme Court of the United States in *Helvering* v. *Bruun*, 309 U.S. 461, overruled the two lower court cases on which this Court relied in the *Porrata* case. The *Bruun* case involved a lessor who leased a piece of property to a tenant who thereafter tore down the building thereon and erected a new building on the land. Later, the tenant was unable to pay the rent, the lease terminated, and the lessor reacquired the land with the building on it. It was held that the market value of the building was taxable to the lessor as income in the year of reacquisition. See also, 2 Mertens, Law of Federal Income Taxation, § 11.15, p. 68 *et seq.*[4]

In view of the foregoing, the Tax Court correctly held that $30,000, actually paid by the co-owners, and not $69,500, should be considered as part of the cost of the property in determining the gain of Caubet in 1942.

■ The second and third assignments are based on alleged errors of the Tax Court in weighing the evidence. As the taxpayer has not brought the transcript of evidence to this Court, we are not at liberty to consider these errors.[5]

■ We turn to the petition of the Treasurer. The only assignment is that the Tax Court erred in including as part of the cost of the property the sum of $5,000 representing the

---

[4] Congress amended the Federal statute after the *Bruun* case. 2 Mertens, *supra*, 1948 Suppl., § 11.15, p. 27. Our statute remains unchanged.

We note that in this particular case there is no problem as to whether the gain is taxable at the time the lease is terminated or at the time the lessor sells the property. See *Helvering* v. *Bruun*, *supra*. Here both events occurred at the same time.

[5] The second error is that the Tax Court assigned arbitrarily a value of $5,000 to the old building as of March 1, 1913, whereas the testimony showed it was then worth $20,000. The third error is that the Tax Court ignored evidence showing that the taxpayer had already paid taxes for improvements amounting to $8,045.

value of the old house, in view of the fact that the taxpayer acquired the property to rent, not to destroy it.

The Treasurer relies on Article 118 of Income Tax Regulations No. 1, which is substantially equivalent to Article 156 of Regulation 33 under the Federal Act. The best answer to this contention of the Treasurer is found in *Commissioner of Internal Rev.* v. *Appleby's Estate*, 123 F. 2d 700, 702 (C.C.A. 2, 1947):

"The second branch of the commissioner's argument rests upon Article 156 of Regulations 33, which declares that 'when a corporation' [amended in later issues of the regulations to 'when a taxpayer'] 'buys' real estate improved with a building, 'which he proceeds to raze with a view to erecting thereon another building,' no deductible loss will be recognized by reason of the demolition of the old building, but it will be considered that 'the value of the real estate, exclusive of old improvements, is equal to the purchase price of the land and buildings.' The contention is that these provisions exclude by implication cases where the taxpayer has no such intention at the time of purchase or acquires the property otherwise than by purchase. No decision has been called to our attention which has accepted this construction of the regulation, and it has been expressly repudiated in at least one case. *Young* v. *Commissioner*, 9 Cir., 59 F. 2d 691, 692. See, also *Anahma Realty Corp.* v. *Commissioner*, 2 Cir., 42 F. 2d 128. The regulation under discussion states the rule to be applied in a common situation, namely, the purchase of improved real estate with the intent to raze the old improvements and rebuild. It would be unreasonable to hold that the statement of a rule for this single instance excludes application of a similar rule to cases where the intent to raze and rebuild was formed after the property was acquired. Losses are recognized only when they result from a closed transaction. If a building is demolished because unsuitable for further use, the transaction with respect to the building is closed and the taxpayer may take his loss; but if the purpose of demolition is to make way for the erection of a new structure, the result is merely to substitute a more valuable asset for the

less valuable and the loss from demolition may reasonably be considered as part of the cost of the new asset . . . " [6]

The decision of the Tax Court will be affirmed.

Mr. Justice Negrón Fernández did not participate herein.

---

[6] *López de la Rosa* v. *Tax Court*, 66 P.R.R. 319, involved a different question.  There the point was whether a taxpayer who razed a building could deduct the value thereof as a loss for the year it was demolished. We held that since he did it because of its ruinous condition and not for the purpose of erecting a new building, Article 118 did not apply and he could deduct the loss during that year.  The *López* case has no bearing on the instant case.