OXFORD PAPER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

OXFORD PAPER COMPANY, OXFORD MIAMI PAPER COMPANY, RUMFORD FALLS POWER COMPANY, RUMFORD FALLS REALTY COMPANY AND UNION BOOM COMPANY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

OXFORD MIAMI PAPER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 20913, 20915, 20914, 20916. Promulgated September 29, 1950.

*Thomas N. Tarleau, Esq.*, and *Charles A. Davey, Esq.*, for the petitioners.

*Michael Waris, Jr., Esq.*, for the respondent.

MURDOCK, *Judge:* The Commissioner determined deficiencies as follows:

| Name | Docket No. | Year | Income tax | Excess profits tax | Declared value excess-profits tax |
|---|---|---|---|---|---|
| Oxford Paper Co | 20913 | 1941 | $6,757.63 | $17,169.13 | |
| Oxford Paper Co. et al | 20914 | 1942 | 152,521.81 | 191,260.96 | |
| Oxford Paper Co | 20915 | 1943 | | 308,654.92 | $151.55 |
| Oxford Miami Paper Co | 20916 | 1942 | 152,521.81 | 191,260.96 | |

The only question for decision is whether Oxford Paper Co. is entitled to deduct for each of the years in question depreciation on property owned by it and known as Island Division Plant. Other issues have been settled by a stipulation of the parties and that stipulation contains the parties' agreement as to certain facts on the issue in question.

The Oxford Paper Co., hereinafter called the petitioner, filed its corporate returns for the taxable years with the collector of internal revenue for the third district of New York. It and three of its subsidiaries, including Rumford Falls Power Co. (hereinafter called Power) are the petitioners.

Power was lessor and Continental Paper & Bag Corporation (hereinafter called Continental) was lessee in December 1936 of the perpetual right to draw a certain number of cubic feet of water per second from a canal connected with the Androscoggin River at Rumford, Maine. The annual rental which Continental was required to pay under that lease had averaged about $69,200. Payment was secured by a lien on Continental's Island Division Plant.

Continental, which was adjudicated a bankrupt on December 17, 1936, the petitioner and Power executed agreements on December 7, 1936, under which, *inter alia,* Continental conveyed properties, including its lease of the water rights at Rumford, Maine, to the petitioner, the petitioner assumed the obligations of Continental with respect to the properties conveyed, and Power accepted the petitioner in place of Continental.

The petitioner, as a result of those agreements, became entitled to the water rights under the perpetual lease, above mentioned, and became obligated to pay the rentals, whereas Continental gave up the water rights and was relieved of the obligations to pay the rentals. Continental, as a part of the transaction, paid the petitioner $100,000 in cash, and transferred to it 60 shares of stock in another corporation and land and buildings known as the Island Division Plant. Thereafter, the petitioner paid the rent and used the plant or a part of it during the taxable years.

The remaining useful life of the plant after December 7, 1936, was 15 years.

The petitioner, on a consolidated return for 1936, showing no tax due because the deductions substantially exceeded the income, reported $456,000 as gross income received from Continental pursuant to the agreement of December 7, 1936. That amount represented the $100,-000 in cash, $6,000, the value of the 60 shares of stock, and $350,000, the value of the Island Division Plant.

The petitioner did not claim any deduction for depreciation of its Island Division Plant on its returns for the taxable years, except with respect to capital additions since December 7, 1936.

The following facts are found from the testimony of a witness: the fair market value of the Island Division Plant, exclusive of the land, was $350,000 on December 7, 1936, and the rental under the lease was a low rental at that time for the water rights covered by the lease.

The Commissioner takes the position that the transaction of December 7, 1936, was fundamentally an acquisition of property which must be treated like a purchase, a purchase does not give rise to any gain for income tax purposes, and, consequently, the property does not take as its basis thereafter its fair market value on December 7, 1936. He reasons further that the consideration moving from the petitioner, representing the cost of all of the properties acquired, was the obligation of the petitioner to pay the rental under the perpetual lease; that cost would have to be allocated, in proportions not shown in the record, to all of the properties acquired in order to determine what part of it represented the cost of the property here in question; and if any depreciation were allowed on a cost basis thus established it would result in a double deduction since the petitioner is taking an annual deduction for the rent which it pays. The United States District Court for the southern district of New York in *Oxford Paper Co.* v. *United States*, 86 Fed. Supp. 366, held that the transaction was a purchase and the cost was the obligation on the lease. The petitioner contends that it acted in accordance with the requirements of the revenue laws in reporting income on its return for 1936, which income included $350,000, the fair market value of the Island Division Plant, and thereafter that property had a basis for depreciation of $350,000. Once the fair market value of property is properly included in income, that property thereafter would have a basis for depreciation and other purposes equal to the value at which it was included in income. *Salvage* v. *Commissioner*, 76 Fed. (2d) 112, affd., 297 U. S. 106; *Maurice P. O'Meara*, 8 T. C. 622, 632.

The transaction of December 7, 1936, may appear to be one thing or another, depending upon where the emphasis should properly be placed. The Commissioner and the District Court place the emphasis

upon the acquisition of the Island Division Plant, but the reasoning in order to do that is labored and would reach a most unnatural result under which $100,000 in cash and valuable property would be received tax-free and the valuable property would thereafter have no basis. The stipulation shows only what was done, not why it was done but the following seems to be the most logical explanation of transactions which are puzzling when merely described. Continental with a plant encumbered by a lien for the water rental was unable to use both profitably and wanted to be relieved from the burden of the lease. The petitioner, in a related but somewhat different business, believed that it could make profitable use of the water rights using all or most of the plant. Continental was so eager to be rid of the lease that it was willing to give the petitioner the plant, $100,000 in cash, and $6,000 in other property as a bonus or inducement for taking over the lease. The petitioner agreed to take over the lease under those conditions. Thus, the most important part of the transaction was not the transfer of the Island Division Plant from Continental to the petitioner, and that transfer should not be treated as if the petitioner had bought the Plant and all the rest was merely incidental thereto. Where a lessee desires to be released from the obligations of a lease and pays cash or property or both to the lessor in order to obtain a cancellation, the cash and the fair market value of the property are income to the lessor. *Walter M. Hort*, 39 B. T. A. 922, affd., 112 Fed. (2d) 167, affd., 313 U. S. 28; *Hilda Kay*, 45 B. T. A. 98. Cf. *Helvering* v. *Bruun*, 309 U. S. 461. This case differs in that here the dissatisfied lessee did not go to the lessor for a cancellation but went to a third party to whom it paid money and transferred property in order to persuade that third party to take over its obligation as lessee under the lease. The petitioner contends that there is no difference in principle between the two situations and none occurs to the Court. It seems obvious that the $100,000 was income to the petitioner in 1936. The Island Division Plant was received in the same way. The petitioner correctly reported the fair market value of the Island Division Plant in income for 1936 as a bonus and thereafter that plant had a basis of that same amount, a part of which should be deducted in each of the taxable years.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

BLACK, *J.*, dissenting: The majority opinion states that the only issue for decision in these consolidated proceedings is whether Oxford Paper Co. is entitled to deduct for each of the years in question depreciation on property owned by it and known as Island Division Plant. The majority holds that under the facts which have been

stipulated, supplemented by the testimony of one witness, Oxford is entitled to such a deduction in each of the taxable years and that the value to be used in calculating such deduction should be the fair market value of the plant at the time it was acquired by Oxford from Continental in 1936.

I do not agree to this conclusion and respectfully record my dissent. The holding of the majority is based in substance on the following statement of law contained in the opinion:

* * * Where a lessee desires to be released from the obligations of a lease and pays cash or property or both to the lessor in order to obtain a cancellation, the cash and the fair market value. of the property are income to the lessor. *Walter M. Hort*, 39 B. T. A. 922, affd., 112 Fed. (2d) 167, affd., 313 U. S. 28; *Hilda Kay*, 45 B. T. A. 98. Cf. *Helvering* v. *Bruun*, 309 U. S. 461. * * *

The majority opinion then goes on to state further:

* * * Once the fair market value of property is properly included in income, that property thereafter would have a basis for depreciation and other purposes equal to the value at which it was included in income. *Salvage* v. *Commissioner*, 76 Fed. (2d) 112, affd., 297 U. S. 106; *Maurice P. O'Meara*, 8 T. C. 622, 632.

I have no quarrel with the statements of law contained in the foregoing quotations from the majority opinion; I simply do not believe that they have any application to these proceedings.

The lessee, which was Continental, paid nothing to the lessor, which was Rumford Falls Power Co., for the cancellation of any lease. In fact, no lease was cancelled. What happened was that Oxford agreed to take over the lease and assume all of its obligations in consideration of Continental transferring to it $100,000 in cash, 60 shares of stock in another corporation and land and buildings known as the Island Division Plant. Under these circumstances, it seems to me that the Commissioner is correct in taking the position that the transaction of December 7, 1936, was fundamentally an acquisition of property which must be treated like a purchase, and a purchase does not give rise to any gain for income tax purposes; consequently, the property acquired does not take as its basis thereafter its fair market value on December 7, 1936. It seems to me that if Oxford is to be allowed depreciation on the Island Division Plant it must be based upon cost to Oxford and not upon the fair market value of the plant at the time of acquisition. That seems to have been the view of the United States District Court for the Southern District of New York in *Oxford Paper Co.* v. *United States, supra.* In this latter case the court said in dealing with another taxable year with respect to the same transactions we are here considering, as follows:

* * * Oxford bought land, buildings, machinery and equipment and water rights from Continental. It paid therefor by assuming a fixed monetary liability of the seller, and undertook another obligation, to lease to International. The basis for depreciation of property obtained in consideration of the assumption

of liabilities is the amount of the liabilities assumed. *Consolidated Coke Co. v. Comm'r*, C. C. A. 3, 1934, 70 Fed. (2d) 446 \* \* \* This basis is, of course, the cost to the taxpayer of the property. \* \* \*

I think the District Court for the Southern District of New York was correct in the above statement as to the law governing Oxford's basis for depreciation on the depreciable property which it acquired from Continental. The stipulated facts in the instant case do not, in my opinion, sufficiently identify petitioner's cost of the property in question to enable us to say what depreciation, if any, petitioner is entitled to have allowed over and above that which respondent has already granted based on the cost of capital additions which Oxford has made to the property since it was acquired from Continental in 1936. I would, therefore, sustain respondent on this issue.

ARUNDELL, HILL, DISNEY, and HARRON, *JJ.*, agree with this dissent.