**GREENWOOD PACKING PLANT v. COMMISSIONER OF INTERNAL REVENUE.**

No. 4978.

Circuit Court of Appeals, Fourth Circuit.

Nov. 12, 1942.

Theodore B. Benson of Washington, D. C., for petitioner.

Arthur A. Armstrong, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Samuel H. Levy, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before PARKER, SOPER and NORTHCOTT, Circuit Judges.

SOPER, Circuit Judge.

The taxpayer, as lessor of a piece of land, profited by the erection of a building thereon by the lessee; and the question for decision is whether the gain was taxable as income in 1935, when the lease terminated and the lessor regained possession of the property, or in 1936 when the land and building were sold. The taxpayer contends that the income was received in 1935, although it was not included in the income tax return for that year; and that the cost basis of the property was its value in 1935 when the build-

ing was erected, and that on this basis, there was no capital gain in 1936. The Commissioner contends, as the Board held, that the taxpayer, having reported no gain in 1935, is bound by its election to account for the gain upon the disposition of the property in 1936, and as the building cost the taxpayer nothing, the taxable gain was the selling price less the cost of the land alone.

In 1934 the taxpayer leased land owned by it to the State Administrator of Federal Relief Administration for South Carolina. The lease provided that on termination all buildings constructed by the lessee should become the property of the taxpayer. The lessee constructed a building on the leased premises in 1934, and terminated the lease on November 25, 1935; and the building, which then had a value of $5,500, thereupon became the property of the taxpayer. The lot had cost the taxpayer $500. In its return for 1935 taxpayer reported no gain as a result of the cancellation of the lease and the acquisition of the building. During 1936 taxpayer sold the land and building for $6,000. Of this amount, $5,500 was received for the building and $500 for the land. In its return for 1936 the taxpayer did not report any income from the sale. The Commissioner determined that the taxpayer realized a gain of $5,500 and the Board upheld this conclusion.

Considerable uncertainty has heretofore existed as to the effect upon the income of a lessor which results from an increase in the value of the leased premises by the erection of a building at the expense of the lessee. The theory was expressed in Hewitt Realty Co. v. Commissioner, 2 Cir., 76 F.2d 880, 884, 98 A.L.R. 1201, that if the building is inseparable from the land, the increase in value becomes taxable income only when the land is sold, and then only in so far as it increases the amount realized. And in M. E. Blatt Co. v. United States, 305 U.S. 267, 279, 59 S.Ct. 186, 190, 83 L.Ed. 167, it was said: "Granting that the improvements increased the value of the building, that enhancement is not realized income of lessor. So far as concerns taxable income, the value of the improvements is not distinguishable from excess, if any there may be, of value over cost of improvements made by lessor. Each was an addition to capital; not income within the meaning of the statute. Treasury Regu-

lations can add nothing to income as defined by Congress."

But this view may not be given effect in the pending case by reason of the subsequent pronouncement in Helvering v. Bruun, 309 U.S. 461, 60 S.Ct. 631, 84 L.Ed. 864. In that case, upon the cancellation of a lease, the lessor regained possession of land upon which the lessee had erected a building that added a substantial amount to the value of the premises. The Commissioner determined that the lessor thereby realized a net gain to the full amount of the increase, and this determination was sustained. The court considered the earlier decisions and the earlier regulations, and rejected the contention that the economic gain consequent upon the enhanced value of the recaptured asset was not gain derived from capital or realized within the meaning of the Sixteenth Amendment, and could be considered taxable gain only upon the owner's disposition of the property. The court said: (page 469 of 309 U.S., page 634 of 60 S.Ct., 84 L.Ed. 864)

"While it is true that economic gain is not always taxable as income, it is settled that the realization of gain need not be in cash derived from the sale of an asset. Gain may occur as a result of exchange of property, payment of the taxpayer's indebtedness, relief from a liability, or other profit realized from the completion of a transaction. The fact that the gain is a portion of the value of property received by the taxpayer in the transaction does not negative its realization.

"Here, as a result of a business transaction, the respondent received back his land with a new building on it, which added an ascertainable amount to its value. It is not necessary to recognition of taxable gain that he should be able to sever the improvement begetting the gain from his original capital. If that were necessary, no income could arise from the exchange of property; whereas such gain has always been recognized as realized taxable gain."

Hence it cannot now be questioned that the increase in the value of the premises in the instant case should have been reported by the taxpayer-lessor as taxable income for the year 1935, although the failure to do so may have been attributable to the uncertain state of the law. The Commissioner conceded that if the increment of value gained by the taxpayer in 1935 had in fact been taxed as income of that year,

the cost of the property in the taxpayer's hands would have been increased by the amount of that increment, and no taxable gain would have been derived from the sale in 1936. It would have been assumed that the taxpayer had in effect received cash income and had invested it in the property; and thereby the inequity of double taxation would have been avoided.[1]

But the Commissioner contends that since the taxpayer did not report the income and pay the tax thereon for the year 1935, no equitable consideration prevents the assessment of the tax on the profit realized from the sale in 1936. A similar course was taken, he suggests, in the earlier decision in Helvering v. Gowran, 302 U.S. 238, 58 S.Ct. 154, 82 L.Ed. 224, where preferred stock, received as a dividend which was exempt from taxation when distributed, was later sold in the same year and the gain, computed on a cost basis of zero, was held to be taxable. See also Larkin v. United States, 8 Cir., 78 F.2d 951, 954; Commissioner v. Farren, 10 Cir., 82 F.2d 141.

Moreover, it is said that the failure of the taxpayer to report the income in 1935 indicated a binding election on its part that any income derived from the improvement of the property should be reported and taxed when the property should be sold; and this election is likened to that exercised by a taxpayer under the taxing statutes and regulations when he deducts a bad debt from gross income in a given year and is later obliged, as we held in Helvering v. State-Planters Bank & Trust Co., 4 Cir., 130 F.2d 44, to report the proceeds of a collection as income in the year in which it is received. Finally, it is suggested that the taxpayer, having taken the position, no matter how innocently, that no income was received in 1935, may be now estopped to deny that the profit on the sale in 1936 should be computed on a cost basis of zero. In support of this application of the doctrine of estoppel we are referred to Larkin v. United States, supra; Commissioner v. Farren, supra; Crane v. Commissioner, 1 Cir., 68 F.2d 640; Countway v. Commissioner, 1 Cir., 127 F.2d 69; Alamo Nat. Bank v. Commissioner, 5 Cir., 95 F.2d 622; Doneghy v. Alexander, 10 Cir., 118 F.2d 521; Bothwell v. Commissioner, 10 Cir., 77 F.2d 35.

In our opinion none of these contentions is tenable. In Helvering v. Gowran, supra, the circumstances permitted no choice as to the point of time when taxable income was received, since the stock dividend as such was exempt from taxation, and the gain to the taxpayer would have escaped taxation altogether had it not been recognized upon the subsequent sale of the stock. But it is more important to bear in mind that the system of taxation embraced in the income tax statutes does not permit a taxpayer to report income at will in any year he may select, but requires him to report it in the year in which it is received. This is the fundamental rule and any variation of it is due to special circumstances. In Burnet v. Sanford & Brooks Co., 282 U.S. 359, 363, 365, 51 S.Ct. 150, 151, 75 L.Ed. 383, the court said:

"All the revenue acts which have been enacted since the adoption of the Sixteenth Amendment have uniformly assessed the tax on the basis of annual returns showing the net result of all the taxpayer's transactions during a fixed accounting period, either the calendar year, or, at the option of the taxpayer, the particular fiscal year which he may adopt. * * * The amount of all such items is required to be included in the gross income for the taxable year in which received by the taxpayer, unless they may be properly accounted for on the accrual basis. * * *

"The Sixteenth Amendment was adopted to enable the government to raise revenue by taxation. It is the essence of any system of taxation that it should produce revenue ascertainable, and payable to the government, at regular intervals. Only by such a system is it practicable to produce a regular flow of income and apply methods of accounting, assessment, and collection capable of practical operation. It is not suggested that there has ever been any general scheme for taxing income on any other basis. The computation of income annually as the net result of all transactions within the year was a familiar practice, and taxes upon income so arrived at

---

[1] Recognition of this equitable principle is seen in Art. 23(k)-3 of Treasury Regulations 94 which prescribes the formula for computing gain or loss where a mortgagee bids in the mortgaged property at a foreclosure sale and subsequently sells it; and also in Art. 22(a) (1), Treasury Regulations 94, which applies when property is transferred by a corporation to a shareholder or by an employer to an employee for less than its market value and the property is subsequently sold.

were not unknown, before the Sixteenth Amendment. See Bowers v. Kerbaugh-Empire Co., supra, 271 U.S. [170], 174, 46 S.Ct. 449 [70 L.Ed. 886]; Pacific Insurance Co. v. Soule, 7 Wall. 433, 19 L.Ed. 95; Pollock v. Farmers' Loan & Trust Co., 158 U.S. 601, 630, 15 S.Ct. 912, 39 L.Ed. 1108. It is not to be supposed that the amendment did not contemplate that Congress might make income so ascertained the basis of a scheme of taxation such as had been in actual operation within the United States before its adoption."

In conformity with this rule, neither the taxpayer nor the Commissioner in the pending case had any choice as to the year for the imposition of the tax upon the gain received by the lessor. The case is not analogous to that of a taxpayer who, in the handling of a bad debt, is allowed to write it off in a particular year when there is reason to believe that it is worthless, but must later account for it as gain to the extent that this expectation is not realized. Even in such a case, the taxpayer does not have a free and arbitrary choice. The practice is designed to enable him to charge off his bad debts as operating losses in the year in which they occur so far as it is reasonably possible to ascertain that they are worthless, and the subsequent accounting for income in case of mistake is merely provided to safeguard the United States against loss. But in the pending case, there is no uncertainty under the prevailing rule. The year 1935 is definitely fixed as the year in which the income was received and the year as to which it must be taxed. The force of this conclusion is emphasized when it is perceived that the Commissioner's contention would permit the taxpayer to defer the payment of the tax on the income until the sale of the property takes place, and then to calculate the tax under the different rate applicable to capital gains.

Nor is there any room in this case for the application of the doctrine of estoppel, based on the loss to the government which sometimes follows, as shown by the cited cases, when a taxpayer fails to report income and its receipt is not discovered until the collection of the tax thereon is barred by limitations. The Commissioner concedes that a reversal of the Board's decision in the pending case will not deprive the government of relief, for under the provisions of the Act of May 28, 1938, Ch. 289, § 820, 52 Stat. 581, codified in § 3801 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev. Code, § 3801, an erroneous inclusion in or omission from the gross income of a taxpayer, affecting the basis of property for gain or loss on sale, may now be corrected despite the running of the statutory period of limitations.

The order of the Board must therefore be reversed.