Hilldun Corporation v. Commissioner.
Hilldun Corp. v. Commissioner
Docket Nos. 5647-63, 2625-65.
United States Tax Court
T.C. Memo 1967-210; 1967 Tax Ct. Memo LEXIS 51; 26 T.C.M. (CCH) 1035; T.C.M. (RIA) 67210; October 26, 1967
*51 Held, that the petitioner was, during the taxable years in question, a personal holding company and is subject to the personal holding company tax imposed by section 541 of the Internal Revenue Code of 1954. Earle H. Grossman, for petitioner. Lawrence J. Shongut, for respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined deficiencies in income tax of $25,263.80 for the taxable year ended August 31, 1960, and $29,208.51 for the taxable year ended August 31, 1961. The question presented is whether petitioner was a "personal holding company" within the meaning of section 542(a) of the Internal Revenue Code of 1954 for the years in question. Findings of Fact Some of the facts have been stipulated and are incorporated herein by this reference. Petitioner is a corporation which was organized in the state of New York in 1932. Its principal offices are located at 566 Seventh Avenue, New York, New York. Petitioner uses an accrual method of accounting, and it filed its federal income tax returns for the taxable years ended August 31, 1960, and August 31, 1961, with the district director of internal revenue, Manhattan, New York. All of petitioner's *52 capital stock is, and was, owned as follows: Albert Greenberg
36%
Sadie Greenberg
36%
Trust for benefit of Robert Greenberg
14%
Trust for benefit of Marilyn Wassner
(the trustees are in both cases
Albert and Sadie Greenberg)
14%
Up until June 1958, petitioner had been engaged only in the real estate business. During the taxable years ending in 1960 and 1961 it owned real estate at 200 Clinton Street, Brooklyn, New York, referred to as the "Clinton Street property," and at 1030 Hempstead Turnpike, Franklin Square, New York, referred to as the "Franklin Square property." In June 1958, petitioner entered the field of factoring, or commercial financing. Substantial capital was required for this new venture, and it was to petitioner's advantage to continue both businesses in one corporate form and retain its existing capital in order to obtain credit and borrow money from banks. At the end of the taxable year 1957 petitioner's net worth was about $800,000. In order to conduct its enlarged operations, petitioner moved to an office in New York City at 566 Seventh Avenue, which was about four times as large as the office it previously maintained. It hired a sales representative, purchased equipment *53 such as bookkeeping machines, adding machines, and typewriters, and ordered new stationery with the heading "Hilldun Corporation, Factors." Petitioner maintained a separate set of books and records for each of the two business operations. It placed funds in the finance operation, which were not intended to be returned to the real estate operation. A separate bank account, under the name of "Hilldun Corporation, Factors," was opened, so that there would be no intermingling of funds between the two operations. The finance operation did not maintain separate capital accounts. Accordingly, at the end of each year, the profits of the finance operation were closed out to an "Intercompany" account maintained by the real estate operation and thence to the real estate operation's surplus account. Occasionally monies were transferred from the bank account of the real estate operation to that of the finance operation, and were treated on the books as loans. Some of the amounts so transferred have been transferred back to the real estate operation. The income which petitioner received from its finance operation consisted of interest received for the use of the funds which it loaned to customers. *54 In its returns this income was not reported as interest but merely as receipts. For the taxable years in question it paid, respectively, $4,330.11 and $9,590.24 as interest to banks for the use of money it borrowed to use in its finance operations. These amounts were deducted by the petitioner from gross income in computing taxable income for the respective taxable years. Store No. 1 in the Franklin Square property was occupied by a tenant under a 5-year lease which ran from March 1, 1956 to February 28, 1961. In March 1959, the tenant, at a cost of $1,300, constructed an addition at the rear of the leased store on land owned by the petitioner. Such construction required the consent of the petitioner, which was granted. At or about the time of the construction of the addition the petitioner agreed to a 3-year extension of the existing lease. Under the extension agreement the rental was increased for the additional three years by $300 per year, because of the fact that the tenant had the use of the additional land upon which the addition was constructed. However, the lease was not amended to provide for any additional rental for the remaining approximately two years of the original *55 5-year term. Under the terms of the lease the addition to the property became the property of the petitioner upon installation. During the taxable year ended August 31, 1960, such tenant of store No. 1 in the Franklin Square property installed an iron boiler at a cost of $425. Under the terms of the lease this boiler became the property of the petitioner upon installation. Because of such installation the petitioner granted the tenant a credit of $195 against the agreed rental. Petitioner received rent, in addition to that reported on its return, only in the amount of $195 due to installation of this iron boiler. The tenant of store No. 7 in the Franklin Square property vacated the premises as of April 1, 1960, upon the termination of the lease. He had deposited with petitioner $270 as rental security. Petitioner had applied $115 thereof in payment of rental for February 1960 and a like amount thereof as rental for the month of March 1960. The balance of $40 remaining in the security account was retained by the petitioner. In its return for the taxable year ended August 31, 1960, it reported the $230 as rental income, but did not report the remaining $40 as income. During the taxable *56 year ended August 31, 1960, petitioner, at a cost of $13, served the tenant of store No. 3 in the Franklin Square property with a dispossession notice. The tenant reimbursed the petitioner for this expense pursuant to the terms of the lease. No amount was included by the petitioner as income in its return on account of this item. The $13 constituted rental income to petitioner in addition to the reported rental income. The cost of heating a store in the Franklin Square property was between $175 and $250 per year, and since there were seven similarly sized stores in that building, the total cost of heating all of the stores was between $1,225 and $1,750 per year. Although the leases covering the stores in this building contained a printed paragraph stating that the landlord should provide heat, a rider attached to each lease nullified such paragraph and provided that the heating unit should be maintained by the tenant at his own expense and that all fuel should be supplied by the tenant at his own expense. The amounts expended by the tenants of the Franklin Square property to heat their stores did not constitute rental income to petitioner. A superintendent occupied apartment 1-G in *57 the Clinton Street property rent free during the taxable year ended August 31, 1960, in partial payment for his services. The maximum rent for this apartment authorized by the City of New York Rent and Rehabilitation Administration during the period of his occupancy was $74.75 per month, or $897 per year. In its rental accounts the petitioner showed rental due of $50 per month on account of this apartment, but showed an adjustment of $50 per month with the result that such accounts showed no rent received on account of the apartment. Its payroll accounts correspondingly showed a payment of salary to the superintendent of $50 per month on account of his use of the apartment, but it appears that in its income tax return the petitioner did not report any amount as rental received from the apartment, nor did it claim any deduction on account of salary paid as a result of furnishing the apartment to the superintendent. The petitioner received rental income, in addition to that reported on such return for the taxable year ended August 31, 1960, of $600 from this apartment. In August 1960, the tenant of apartment 4-G of the Clinton Street property paid the petitioner $10 as partial reimbursement *58 of cost of installation of better quality screens in the apartment. The lease governing the premises provided that all improvements made by either party would become the property of the landlord. It also provided that the tenant should make all repairs necessitated by his misuse or neglect of the premises. This $10 reimbursement was treated on petitioner's books as a reduction of expenses and was not reported as income in the petitioner's return for the taxable year ended August 31, 1960. The petitioner was the lessee of its office space at 566 Seventh Avenue in New York City, and paid a rental of $4,800 per year. Two other corporations also used this rented office as their only registered address. These were Burgreen Realty Corporation and 52 Clark, Incorporated, which were engaged in real estate operations, the former owning and operating two rental buildings and the latter owning and managing an apartment hotel. The stock of both the petitioner and Burgreen Realty Corporation was owned by the same persons in the same proportions. Albert and Sadie Greenberg each owned 25 percent of the stock of 52 Clark, Incorporated, and 36 percent of the stock of the petitioner. The remaining *59 50 percent of the stock of 52 Clark, Incorporated, was owned by persons who held no interest in the petitioner. The managing agent of 52 Clark, Incorporated, occupied a part of the petitioner's office. A part of the bookkeeping for 52 Clark, Incorporated, was done by the petitioner's bookkeeper. During the taxable year ended August 31, 1960, 52 Clark, Incorporated, paid the petitioner $600. No services were rendered by any of petitioner's employees to Burgreen Realty Corporation. It paid the petitioner $1,440 during the taxable year ended August 31, 1960, as consideration for the space occupied and for the mailing address. The petitioner treated these amounts of $600 and $1,440 as "sundry income" on its books and records and as "other income" on its Federal income tax return, rather than as rental income. In its return for the taxable year ended August 31, 1960, the petitioner reported $96,114.91 of gross receipts from its finance operations, $9,090 of dividends, $205 of interest, $109,267.39 of rent, $8,901.30 of net capital gain from sale of securities, and $2,040 of other income, or total gross income of $225,618.60. It reported taxable income of $36,975.84. In its return for the *60 taxable year ended August 31, 1961, the petitioner reported $118,174.25 of gross receipts from its finance operations, $7,725 of dividends, $327.07 of interest, $109,735.64 of rents, $6,968 of net capital gain from sale of securities, and $2,640 of other income, or total gross income of $245,570.15. It reported taxable income of $48,531.99. In the notices of deficiency the respondent determined that during the taxable years ended August 31, 1960, and 1961 the petitioner was a personal holding company as defined in section 542 of the Internal Revenue Code of 1954 and was therefore subject to the personal holding company tax imposed by section 541. In the notice of deficiency for the taxable year ended August 31, 1960, the respondent determined a net increase in the petitioner's gross income of $1,526.45. In reaching such determination the respondent increased the reported gain from sale of securities by $323.62 and the reported rental income by an amount of $1,843.28. This latter figure consisted of $600 on account of the apartment occupied rent free by the superintendent of the Franklin Square property, $195 on account of the iron boiler installed by the tenant of store No. 1 of the *61 Franklin Square property, and other miscellaneous items. In such computation of gross income the respondent determined that the gross receipts reported by the petitioner from its finance operations had been overstated by $640.45. In the notice of deficiency for the taxable year ended August 31, 1961, the respondent made no adjustment to the amount of rental reported by the petitioner, the amount of net receipts from the finance operations, or the gross income reported. Opinion Section 541 of the Internal Revenue Code of 1954, as it existed in the years in question, imposed on the undistributed personal holding income (as defined in section 545) of every personal holding company an additional tax of 75 percent of the first $2,000 of such income, and of 85 percent of such income in excess of $2,000. Section 542 defined a personal holding company as being any corporation, with certain exceptions, if at least 80 percent of its gross income was personal holding company income as defined in section 543 and if more than 50 percent in value of its stock was owned by or for not more than 5 individuals. In general, dividends, interest, rents, and gain from the sale of securities are all included *62 within the definition of personal holding company income. Section 543(a)(7), [1] however, provided that if rent constituted 50 percent or more of the gross income, such rent would not constitute personal holding company income. In its return for the taxable year ended August 31, 1961, petitioner reported gross income of $225,618.60. In the notice of deficiency, the respondent increased the reported *63 gross income by the net amount of $1,526.45. Among other adjustments he increased the amount of rental reported by the amount of $1,843.28 and reduced the amount of reported finance operation gross receipts by $640.45. Thus, according to the respondent's determination, the petitioner for the taxable year ended August 31, 1960, had gross income of $227,145.05, of which rents, dividends, interest (including interest received in the finance operation) and net capital gain from sale of securities constituted far in excess of 80 percent and of which rents constituted only 48.92%. Accordingly, the respondent determined that the petitioner was not entitled to any relief from the personal holding company tax. In its return for the taxable year ended August 31, 1961, petitioner reported gross income of $245,570.15 which included a total of $242,930.15 of rental income, dividends, interest (including interest received in the finance operation) and net capital gain from sale of securities. The amount of rents reported was $109,735.64. In the notice of deficiency the respondent did not adjust any of these amounts. Thus, according to the respondent's determination, the personal holding company *64 income was far in excess of 80 percent of gross income, and rents constituted only 44.69% of such gross income. Accordingly, the respondent determined that the petitioner was not entitled to any relief from the personal holding company tax. The petitioner, however, contends that for the taxable year ended August 31, 1960, the respondent's determination of gross income from rents and interest is erroneous. It is its contention that rental income as reported should be increased to $116,790.67 by adding to such reported income $7,523.28 (which is $5,680 more than the respondent increased such reported rental income), that income reported from the finance operation should be decreased by $4,970.56 (which is $4,330.11 more than the respondent decreased such reported income), and that the proper amount of gross income for such taxable year was $226,455.77. It contends therefore that rental income constituted more than 50 percent of gross income; that such rental income is not to be considered as personal holding company income; that less than 80 per cent of its gross income for the taxable year was personal holding company income; and that therefore it is not a personal holding company subject *65 to the tax imposed by section 541. We first consider the petitioner's contention that rental income as reported for the taxable year ended August 31, 1960 should be increased. Section 1.61-8(c) of the Income Tax Regulations provides that, as a general rule, if a lessee pays any of the expenses of his lessor such payments are additional rental income to the lessor; that if a lessee places improvements on real estate which constitute, in whole or in part, a substitute for rent, such improvements constitute rental income to the lessor; and that whether or not improvements made by a lessee result in rental income to the lessor depends upon the intention of the parties. It has been held that improvements will not be deemed rent unless the intent to treat them as such is plainly disclosed. See M. E. Blatt Co. v. United States, 305 U.S. 267, and Grace H. Cunningham, 28 T.C. 670, affd. (C.A. 9) 258 F. 2d 231. It is the petitioner's contention that the reported rental income for the taxable year ended August 31, 1960, should be increased by $1,300 or some portion thereof because of the construction in the prior year by the tenant of store No. 1 in the Franklin Square property of an addition *66 at the rear of the leased premises. It relies upon the portion of section 1.61-8(c) of the Income Tax Regulations which relates to improvements made by the lessee. As pointed out in the findings of fact, the lease was extended for an additional 3-year period beyond February 28, 1961, and the rental for such additional three years was increased $300 per year because of the fact that the tenant was occupying additional land of the petitioner upon which the addition had been made. However, the stated rental in the lease was not changed for the remaining two years of the original term of the lease. The secretary of the petitioner testified in effect that the petitioner agreed with the tenant that the latter would not have to pay rent as such for use of the additional land for the remaining two years of the original term of the lease because the petitioner would be enriched by the addition. We do not construe this testimony as establishing that this improvement constituted or was intended to constitute rent or a substitute for rent for the taxable year in question. Furthermore, there has been no showing that the petitioner on its records treated this improvement as constituting rent for *67 such taxable year. It is our conclusion that the petitioner is not entitled to increase rental income for such taxable year by any amount on account of this improvement. The petitioner contends that in such taxable year it derived rental income in the amount of $425, representing the cost to the above tenant of the installation of an iron boiler on the premises. The petitioner granted the tenant a credit of $195 against the agreed rental on account of this installation. We cannot find from the evidence that it was the intention of the parties that any greater amount than $195 should constitute rent on account of this installation. The respondent increased the reported rental income, and the gross income, by the amount of $195. The respondent's determination in this respect will not be disturbed. The petitioner further contends that it was in receipt of additional rental income in the amount of $40, representing the portion of a security deposit made by the tenant of store No. 7 in the Franklin Square property, after the application of the remainder of the deposit in payment of rental for the months of February and March 1960. There is no evidence to show that the lessee owed any further *68 rent. For all that appears, the petitioner was under a liability to return this remaining $40 to the tenant. Under the circumstances, we cannot conclude that the petitioner is entitled to an increase in rental income by the amount of $40. The petitioner also contends that it had additional rent of $13, consisting of reimbursement to the petitioner by the tenant of store No. 3 in the Franklin Square property on account of a dispossession notice. This payment was made pursuant to the requirement of the lease. It is our opinion that this was a payment by the lessee of an expense of the lessor and therefore constituted rent under section 1.61-8(c) of the Income Tax Regulations. We agree with the petitioner that both gross income and rental income, as determined by the respondent, should be increased by this amount of $13. The petitioner also contends that rental income, and gross income, as determined by the respondent, should be increased by an amount of $1,750 claimed to represent the cost, borne by the tenants, of heating the stores in the Franklin Square property. The petitioner's argument seems to be that this was an expense of the petitioner which was paid by the tenants and hence *69 constituted rental income. We see no merit whatever to this argument. The leases specifically provided that the cost of heating the stores was the obligation of the tenants. The petitioner further contends that reported rents, and gross income, should be increased $897by on account of the occupancy by a superintendent, in partial payment for his services, of apartment 1-G in the Clinton Street property. Its position is that this amount, which was the maximum rent authorized by the City of New York Rent and Rehabilitation Administration, represented the fair rental value of such apartment. However, it appears that on its records the petitioner treated the consideration received from this apartment, by way of services of the superintendent, as only $50 per month. The respondent increased reported rental income, and gross income, for the taxable year ended August 31, 1960 by $600 on account of this apartment. We think the petitioner has failed to show that any further increase should be made. The petitioner also contends that an amount of $10 constituting a partial reimbursement to it by the tenant of apartment 4-G for the cost of installing screens constituted rental income. On brief *70 the petitioner sometimes refers to this as an improvement and sometimes as a repair. We think the petitioner has failed to establish that this $10 constituted rent. If the $10 represented cost of an improvement made by the tenant, there is no showing that it was intended by the parties to constitute rent. If it was for a repair the evidence does not establish whether or not it was a reimbursement of an expense of the petitioner as lessor. Finally, the petitioner contends that an amount of $2,040, which had been reported as "other income," in reality constituted rental income. This amount consisted of $600 paid to the petitioner by 52 Clark, Incorporated, and $1,440 paid to the petitioner by Burgreen Realty Corporation. The respondent first contends that these amounts did not constitute rents but compensation for services rendered to those corporations by the petitioner. The evidence shows, however, that the $1,440 was paid by Burgreen Realty Corporation in consideration for the space occupied in petitioner's office and in order to obtain a mailing address and that no services were rendered to that corporation by the petitioner. The evidence also shows that in consideration of its payment *71 of $600, 52 Clark, Incorporated, also occupied a part of the petitioner's office and obtained such office as its mailing address. However, the petitioner did render some bookkeeping services for that corporation, and we think it must be considered that some undetermined minor portion of $600the constituted payment for such services. The respondent alternatively contends that the amounts in question should be excluded from rents for purposes of the 50 percent test set forth in section 543(a)(7) because of the specific exclusion set forth in such section for amounts falling within the provisions of section 543(a)(6) of the Code. [2] *73 It is his position that since in each instance one or more stockholders of Burgreen Realty Corporation and 52 Clark, Incorporated, owned more than 25 percent in value of the outstanding stock of the petitioner, it should be considered that such individual or individuals became entitled to the use of the property by an "other arrangement," and that hence section 543(a)(6) is applicable. He relies upon 320 East 47th Street Corporation v. Commissioner, (C.A. 2) 243 F. 2d 894, which reversed upon this issue 320 East 47th Street Corp., 26 T.C. 545. [3] The petitioner, *72 on the other hand, maintains that the separate identity of Burgreen Realty Corporation and 52 Clark, Incorporated, as corporations and their stockholders should be respected and that it should not be considered that the stockholders thereof obtained the right to use the leased property. In this respect the petitioner's contention is in accord with the positions which we took in 320 East 47th Street Corporation, supra, and in Minnesota Mortuaries, Inc., 4 T.C. 280. We find it unnecessary at this time to re-examine our position in the light of the opinion of the Court of Appeals for the Second Circuit in 320 East 47th Street Corporation v. Commissioner, supra, since even if it be assumed arguendo that the full amount of $2,040 paid by Burgreen Realty Corporation and 52 Clark, Incorporated, constituted rents, within the contemplation of section 543(a)(7), petitioner's rents for the taxable year ended August 31, 1960, would not constitute 50 percent or more of the gross income, as will be pointed out hereinafter. The petitioner contends that the gross income for the taxable year ended August 31, 1960, consisting *74 of interest earned in its finance operations, should be reduced by the amount of $4,330.11, representing interest which it paid to banks for the use of money it borrowed to use in its finance operations. It relies upon section 1.61-3(a) of the Income Tax Regulations.[4] It states that a finance company can be compared to a mercantile company, that the finance company is merchandising money instead of materials, and that the interest paid out is comparable to the cost of goods sold which is allowable as a deduction in a mercantile business when determining gross income. The petitioner cites a number of cases. [5] However, an examination of those cases shows that in each one some product was sold which required a determination of the cost of goods sold in accordance with the principle which we enunciated in Joe W. Scales, 18 T.C. 1263, that "In figuring business income involving the sale of goods, it is axiomatic that gross income is gross sales less the cost of goods sold." In the instant case the petitioner did not sell goods. Accordingly, it is our opinion that the petitioner's gross income should not be reduced by the interest expended, and we have found no authority to the contrary. *75 Rather, interest constitutes a deduction from gross income, in determining taxable income. See sections 161, 162, and 163 of the Code. The instant case is analogous to John H. Gooch, 21 T.C. 481. In that case the taxpayer argued that the renting of properties was similar to the manufacture of commodities for sale and that certain expenditures should be taken into account in computing his gross income. In rejecting such contention we stated in part: * * * petitioner likens the leasing or renting of the properties to tenants to the manufacture of commodities for sale, to the end that the overhead and other expenses attendant upon the ownership and renting of the properties are parallel to or comparable in substance to the cost of goods sold, in the case of a manufacturing concern, and are to be taken out or eliminated in arriving at the gross income of the owner of the rental properties. The short answer is that, regardless of theory, gross income as we are here concerned with it is gross income according to the statute, and, according to the statutory plan, such items as taxes, maintenance, and the allowance for depreciation are allowable deductions, from gross income in arriving at *76 net income, and not deductions from total or gross receipts in determining statutory gross income. Accordingly, it is our conclusion that the petitioner's gross income for the taxable year ended August 31, 1960, is not to be reduced by the amount of the interest paid out. In view of our conclusions above, the petitioner's gross income for the taxable year ended August 31, 1960, amounted to $227,158.05 and the rents which it received (including $2,040 which we have assumed arguendo is includable in rents) amounted to $113,163.67, which does *77 not amount to 50 percent or more of the gross income. Accordingly, the rents received are to be included in personal holding company income, and it is clear that the personal holding company income amounted to at least 80 percent of the gross income, with the result that the petitioner has failed to show that it is entitled to relief from the personal holding company tax for such year. It should also be stated that the petitioner has adduced no proof, and makes no argument, that the respondent's determination of the amount of gross income, rents, and personal holding company income for the taxable year ended August 31, 1961, are erroneous. As pointed out above, under the respondent's determination of such amounts, the petitioner is not entitled to relief from the personal holding company tax for that year. The petitioner points out that its rental operations and its finance operations were conducted as separate businesses, accounts being kept separately for each, and contends that if each were treated as a separate entity neither would be classified as a personal holding company, referring to section 542(c)(9) of the Code with respect to the finance operation [6] and to section 543(a)(7) *78 with respect to the real estate operation. In view thereof, it makes the argument that it would be inequitable to treat the petitioner as a personal holding company. However, we cannot ignore the fact that the two activities were carried on by a single corporation - indeed, the evidence shows that the petitioner deemed it necessary for its finance operation to be carried on by the same entity in order that it could use the borrowing power existing as a result of the rental operation. The statute, of course, defines the term "personal holding company", with certain exceptions, as any "corporation." The determination of whether a corporation constitutes a personal holding company must, therefore, depend upon the totality of its operation. The petitioner also argues that the tax in question was designed to prevent the avoidance of the graduated individual income tax by use of an "incorporated pocketbook" - that is, *79 by placing investment funds in a corporation. While this, of course, was the primary motive in enacting the personal holding company tax provisions (H. Rept. No. 704, 73d Cong., 2d Sess., pp. 11-12), [7] *80 the statute as written is much broader in its application. As stated in Kurt Frings Agency, Inc., 42 T.C. 472, "If petitioner meets the literal definition of a personal holding company, then the provisions of section 541 apply." And as stated in St. Louis Company v. United States, (C.A. 3) 237 F. 2d 151, the detail and strictness of the personal holding company provisions have resulted in hardship and apparent inequity in several situations, but relief of hardship requires legislative, not judicial, correction. In view of all the foregoing, we must conclude that the petitioner has not established that the respondent erred in determining that it was, during the taxable years in question, a personal holding company subject to the personal holding company tax imposed by section 541 of the Code. Decisions will be entered under Rule 50. Footnotes
1. Section 543(a)(7) of the Code provided as follows: SEC. 543. PERSONAL HOLDING COMPANY INCOME. (a) General Rule. - For purposes of this subtitle, the term "personal holding company income" means the portion of the gross income which consists of: * * *
(7) Rents. - Rents, unless constituting 50 percent or more of the gross income. For purposes of this paragraph, the term "rents" means compensation, however designated, for the use of, or right to use, property, and the interest on debts owed to the corporation, to the extent such debts represent the price for which real property held primarily for sale to customers in the ordinary course of its trade or business was sold or exchanged by the corporation; but does not include amounts constituting personal holding company income under paragraph (6).↩
2. Section 543 provides in part as follows: (a) General Rule. - For purposes of this subtitle, the term "personal holding company income" means the portion of the gross income which consists of: * * *
(6) Use of corporation property by shareholder. - Amounts received as compensation (however designated and from whomsoever received) for the use of, or right to use, property of the corporation in any case where, at any time during the taxable year, 25 percent or more in value of the outstanding stock of the corporation is owned, directly or indirectly, by or for an individual entitled to the use of the property; whether such right is obtained directly from the corporation or by means of a sublease or other arrangement. * * * ↩
3. It appears that the respondent's contention in this respect as to the years here involved is contrary to his position published in Rev. Rul. 65-259, 1965-2 C.B. 174. It was there stated that he would follow the decision of the Court of Appeals for the Second Circuit in that case and would no longer follow the contrary decision in Minnesota Mortuaries, Inc., 4 T.C. 280↩, in which he had previously acquiesced. However, it was stated that such revenue ruling would be applied only with respect to taxable years beginning after June 30, 1965.
4. Section 1.61-3(a) of the Income Tax Regulations provides in part as follows: (a) In general. In a manufacturing, merchandising, or mining business, "gross income" means the total sales, less the cost of goods sold, plus any income from investments and from incidental or outside operations or sources. * * * The cost of goods sold should be determined in accordance with the method of accounting consistently used by the taxpayer.↩
5. Woodside Acres v. Commissioner, (C.A. 2) 134 F. 2d 793, affg. 46 B.T.A. 1124; Garrett Holding Corporation, 9 T.C. 1029; Joe W. Scales, 18 T.C. 1263; Estate of R. L. Langer, 16 T.C. 41; and Ray Edenfield, 19 T.C. 13↩.
6. Such section excepts from the personal holding company category a finance company actively and regularly engaged in the business of purchasing or discounting accounts or notes receivable or installment obligations or making loans, if it meets certain other specified tests.↩
7. Such committee report states in part: Perhaps the most prevalent form of tax avoidance practiced by individuals with large incomes is the scheme of the "incorporated pocketbook." That is, an individual forms a corporation and exchanges for its stock his personal holdings in stocks, bonds, or other income-producing property. By this means the income from the property pays corporation tax, but no surtax is paid by the individual if the income is not distributed. * * *
a corporation which falls within this section because of the nature of its business and the number of its stockholders can always escape this tax by distributing to its stockholders at least 90 percent of its adjusted net income. The stockholder will, of course, be subject to the graduated surtaxes upon such distributions. Thus, the section should work no real hardship upon any corporation except one which is being used to reduce surtaxes upon its shareholders.